Go ahead, you may proceed. Good morning, Your Honors. May it please the Court, Jill McGuire on behalf of the appellant, Erin Williams, I'd like to reserve five minutes for rebuttal, please. All right. Thank you. Your Honors, with respect to the excessive force claims, the scope of this appeal has narrowed considerably. The City has conceded that a new trial is required for Mr. Williams' claims of excessive force against Officers Fields and Jones as to the June 2008 beating. The City concedes that the District Court committed reversible error when it substituted its view of the facts, finding that Mr. Williams failed to prove his claim because he was confrontational in his behavior towards the guards and that justified their use of force against him. That same reasoning carried over to his ruling as to the April 2008 beating, and it is error for the same reasons as to the June 2008 beating. The City does not defend the ruling, does not defend the use of force. However, Mr. Williams put on unrebutted evidence that he was kicked, stomped, thrown to the floor, that he was maced in the face repeatedly. On those facts, a jury could certainly find that he suffered physical pain, and physical pain is sufficient for compensation for recovery under Section 1983. Can we talk for just a moment about the withholding of medical care claim? Certainly, Your Honor. That was dismissed on the morning of trial, and your argument has been that the court essentially didn't have authority to do that. There wasn't authority under Rule 12, under Rule 50, under Rule 56. And so the question I've got to you is, can it really be the case that if, and take it out of this particular case if you need to, into the abstract, that if it's clear on its face that a party has shown up to court without evidence that will be crucial to make its claim, is the position that you're advocating that the court has to take the time to let that person put on their obviously inadequate proof so that you can get to the end of the plaintiff's case and then have a Rule 50 motion? You can't address it at the start? Well, respectfully, Your Honor, to begin, we would submit that there was a substantive error. But if the hypothetical is that... I'm giving you a hypothetical so that we don't get into the weeds right now on the facts. Because your argument seems to be the court doesn't have a power to do that, and I'm intrigued by that. Your Honor, our position is this, that obviously the court has a great deal of authority to run its docket and dismiss frivolous claims, but that this claim was not frivolous. Mr. Williams stated a claim... Even if it's not frivolous, if it's just without merit in the sense that you can't make your claim stick. Not frivolous, but you don't have proof. Can the court not say, you don't have adequate proof? I know you don't have adequate proof. You just told me you don't have a needed piece of proof. Well, Your Honor, respectfully, under these circumstances, Mr. Williams didn't have notice that that was the position the city was going to take that morning. He never had an opportunity to research the issue to present any sort of contrary evidence to that fact. That's why we're taking it up to a higher level of abstraction. Not here. At the level of abstraction, it's clear that there's inadequate proof. Are you saying that the court has to go through some sort of notice opportunity to be heard before it can rule and say, you just don't have the, you can't make your case? Your Honor, the inherent authority of the court is capped by the rules of procedure. And those rules are in place to afford fairness and an opportunity to both sides of the equation, to both sides in the adversarial proceeding. And that opportunity was not afforded here. Mr. Williams didn't have notice. Let's remove it from the abstract a little bit, but talk still hypothetically. Let's assume this is a case where expert testimony is necessary. And the plaintiff comes in on the first day of trial and the court says, well, who's your expert going to be? And looks at the pre-trial memorandum and there's no expert. And let's say there's no dispute that an expert witness would be required. Wouldn't the court have the authority under those circumstances to dismiss that claim? But there would have been a pre-trial memorandum in place, a pre-trial briefing on both sides. Well, not necessarily. The other side doesn't even raise it. But the court looks and says, who are your, you don't even need a pre-trial memorandum. You get to court and the court says, who are your witnesses? And you list your witnesses and there's no expert. And the court says, isn't an expert required in this case? Yes, Your Honor, but I couldn't find one. Are you saying under those circumstances, the court could not dismiss that claim? No, Your Honor, under those circumstances, the court could. But those are not the circumstances before this court. And what's the source of the authority for the court to do that? I think you would look at kind of the confines of, you've got Rule 12, Rule 56. Rule 50 would not apply in those circumstances. And you do have some authority that, of course, the court has inherent authority to proceed with its docket in a timely fashion. Right, and I'm asking you, under the very circumstances that Judge Van Aske has put you. It would be purely based on an argument that there's inherent authority. It would not be governed by the rules of procedure. It would not be governed by Rule 12, 56, 50, the pre-trial briefing under Rule 16. There would not be any rule of proceeding to, that would permit that. But it would be limited. Well, it would strictly be an exercise of authority. But we would submit that, that would be the only grounds. And it would be lawful authority. In those very extreme circumstances, where it was absolutely crystal clear that you had to have an expert, that they conceded you had to have an expert, and that there was no expert available. Essentially, you're saying that there's a missing element of a claim. The preferred method would still be a Rule 56 motion, given the other side notice and opportunity to respond. Even if there were no such authority, it would be harmless on the hypothetical, right? Because the same result would have followed at the end of the plaintiff's case. Yes, Your Honor. But again, these are not the facts before this court. In these circumstances, one... Well, you're saying substantively the problem is that the district court was wrong in saying that you needed an expert witness on that failure to provide medical care claim. Correct. But even with the substantive error aside, I appreciate the hypothetical that you just gave. But the rules of procedure are still in place for reasons to ensure fairness and opportunity to both sides of the equation, and that fairness would not be afforded to both sides under the circumstances that you offered. So the only way that the court could move would be under the auspices of inherent authority. And I guess it could do so, but we would submit that that would be incorrect. Sir, are you suggesting that in this particular case, what you claim to be the procedural error by the district court in and of itself, regardless of the substantive correctness of the decision, requires that that claim be reinstated? Yes, Your Honor. That here, the city was on notice that Mr. Williams was maintaining a denial of medical treatment claim as to the city. He put it in his pre-trial briefing. The city did not take any issue with it in its pre-trial briefing. It focused specifically on excessive force. Is the obligation on the city to point out the flaw in the plaintiff's case? Your Honor, if that is the basis for dismissing the claim, then yes, it is incumbent upon the city to point that out. It did not do so until the morning of trial, and if that, we're past Rule 12 or past Rule 56, we're in Rule 50 world, and at that point, Rule 50 was not abided. What's the basis for the assertion that the city has an obligation to point out the flaw prior to trial? Well, if it has identified a weakness in the claim, it says that Mr. Williams cannot present this claim because he cannot prove one of its elements, then the city can point that out. Sure, it can, but your position is it has to have done it, and I guess I'm asking what's your authority for the position that the city's obligated to follow a Rule 12b motion or a Rule 56 motion? What's the basis for saying they can't show up at trial and say, hey, they're lacking proof? Your Honor, because there would be no notice offered to Mr. Williams, there was no opportunity for him to research the issue, and in fact, if expert testimony was required to provide expert testimony, he never had that chance. Assume that they didn't say anything before trial. They went through the plaintiff's case and they made their Rule 50 motion. Are you saying that they wouldn't be entitled to do that, that it would be a violation of due process? Well, at that point, under Rule 50 procedures, Mr. Williams has had a chance to put on his case, and then they could say that there was not enough evidence to support a jury's finding for Mr. Williams, and that would be appropriate. That never happened here. He was never given the opportunity to put on his case. I'm puzzled by the claim that there's a notice problem there. If you concede that you can go through trial, if you know what the evidence is going to be, it seems simply a matter of form to say you've got to go through the exercise of putting it on in front of the jury, and then Rule 50 blesses it. But leaving that aside for the moment, would you concede that the city has a policy with respect to prescription medication? The city has a policy called the Access to Care Policy that speaks to prescription medication. However, Mr. Williams put forth evidence that there was a separate policy on the ground practice in place by PHS. PHS disputed that that was a PHS policy and said it was a city policy. Right. Your evidence in that regard was his statement that somebody told me there's a policy. Well, we have several pieces of evidence. Yes, that's to start is his grievance in which he stated that he complained of pain, requested treatment, was told he would not be receiving any prescription pain medicine because of a policy. In response to that grievance of the PHS Acting Health Services Administrator at JA 183, stated Perkins had been prescribed and Tylenol was available from the commissary. When Mr. Williams filed his complaint, he described that there was a policy of referring inmates to the commissary to purchase pain medicine. In moving for summary judgment, PHS proffered Ms. Haney in her affidavit. She stated, citing to the specific paragraphs in Mr. Williams' complaint, that there was such a policy that it was the reason he did not receive his pain medicine, but it was a city policy. Well, isn't, when you read Ms. Haney's affidavit, doesn't it actually speak to non-prescription medicine? She does use the term non-prescription pain medicine. So her affidavits talk about non-prescription medicine. We're talking about prescription medicine, right? Correct, Your Honor. Okay. So if we're talking about prescription medicine and there's an access to care policy that's on the books, and the only thing that Mr. Williams has got to say in response to that is, somebody told me there's a policy, your position is that that creates a factual issue as to whether or not there's a policy for Monell purposes? Yes, Your Honor. Really? It's not simply that Mr. Williams said there's a policy, that she admitted, citing to paragraphs in his complaint where he described the policy. Who's the she? I'm sorry, Ms. Haney, PHS's Acting Health Services Administrator. Does she not say specifically she's talking about non-prescription medication? She does. We can look at her language. Right. So I'm puzzled by your reference repeatedly to it when she's talking about there being a policy specific to non-prescription medication that you're to get it from the commissary. How is what she says there contrary to the city's assertion that as for prescription medication, we have one policy and one policy only, and it's publicized, and it's called the access to care policy, and that's that? Your Honor, Ms. Haney never identifies the policy to which she's referring. She cites to the complaint allegations. She admits that a policy, the complaint of policy exists, and that it was a reason he did not receive his pain medicine. She never identifies the city policy by name. She never references or attaches anything to her affidavit. So there's nothing from PHS in the record that establishes that the access to care policy is the policy in play. And there's clear case law that you're looking at the actual practices on the ground. If there's a well-founded or a fine policy hanging on the wall, that doesn't matter when what you're looking at in actuality is different. And that's what Mr. Williams alleged, that there was a practice on the ground distinct from the access to care policy. Thank you. Okay. Thank you very much. Any other questions? All right. Thanks, Ms. McGuire. Okay. How do you say your name, ma'am? It's Kelly Diffley. Diffley. Okay, Ms. Diffley. Thanks. So good morning, Your Honors. May it please the Court. My name is Kelly Diffley, and I represent the city appellees in this case. And with the Court's permission, I'm going to argue on behalf of the city appellees for 11 minutes, and co-counsel will argue on behalf of PHS for four minutes. Right out of the box, let me ask you. You've conceded that the case has to go back, right? With respect to one of the excessive force claims for Jones and Fields. Right. Thank you, Jones and Fields. So my question to you is, if you've conceded that, and there's some hair on the case, so to speak, why doesn't it make sense to send this thing back and let the district court take it from the top? Just go ahead. And to the extent there were problems here or questionable exercises of discretion or power, get it done. Why are we here on appeal? Because there are numerous defendants in this action, and I believe that each of those defendants are separate public employees, and I'm a public employee. And if I were sued as a public employee, and I won a trial, or I won in the district court, and it was up on appeal, and there was a valid basis for affirmance of that appeal, I certainly wouldn't feel like, well, you know, just because part of the case was getting thrown back, you know, we should just throw it all back in together. Fair enough. I think that there are valid basis, there are several valid basis for affirming the trial. What's the basis for the first incident, the first alleged claim of excessive force? Why is it appropriate that the judge determine as a matter of law that that claim did not merit submission to the jury? The first excessive force claim. Right. Well, we are not proffering to this court to affirm on the same basis that the district court did. We're arguing an alternative basis, which is that at trial, Mr. Williams, at the end of his case in chief, when he had entered all his evidence into the record, failed to offer any evidence whatsoever of any injury. He didn't offer any evidence of pain. What's the relevance of that? He got beat up on that day. What's the relevance of that? Does the law say you have to come with a permanent injury or you get no relief? Isn't it enough? It's not the relevance of permanent injury. He could have offered evidence of pain. He could have offered evidence of emotional injury. He could have offered evidence of physical injury. He needed to offer some evidence of injury. If you're getting beat up, can't the jury make a reasonable inference that that hurts? I think the problem with the inference argument is that it's a sort of circular argument. If you're going to say that you can infer pain, you're sort of eviscerating the idea that that's an element of the claim. I would proffer to this court, and I'm suggesting to this court, that this is not an issue that has been considered by this court or the Supreme Court before. This is an issue of first impression. But there are certain constitutional claims that the courts have held that have a specific requirement of injury. For example, denial of medical treatment claims are- Stick with this one, though. Not medical treatment. Let's talk about this one because that's the one we'll be talking about. A guy gets punched, kicked, maced in the face, and you're saying it's not enough for him to say, I got punched, kicked, maced in the face. He's also got to say, and it hurt, or he loses? If I may, just beg the court's indulgence for one minute. The reason I wanted to point to the denial of medical treatment claim is the Supreme Court in Estelle specifically pointed out that there are two elements of a denial of medical treatment claim, and one element is injury. And so the court has been willing to state that in some constitutional claims, injury is a specific element of that constitutional claim. Yes, but why do you need direct evidence of that? Why can't you establish something circumstantially as you would any element in any case under the sun? So the circumstantial evidence of injury is that you got stomped, kicked, maced, et cetera. And the jury can then from those circumstances draw the reasonable inference, and indeed the judge should have taken every inference most favorably to Mr. Williams, that there was injury. I think when we follow general tort-like principles, it's incumbent upon a plaintiff in proving their case to put forth direct evidence of the elements of their claim. And if an element of a claim is to prove injury or damages, they need to put forth direct. What's your authority for that? What's your authority for saying you cannot establish an element of a tort with circumstantial evidence? My next point was going to be that I am willing to entertain the idea that there are certain, there may be certain circumstances under which you might be able to infer injury or pain. For example, if Mr. Williams, if the evidence was that Mr. Williams had been shot, or if Mr. Williams had been run over a car, or some truly extreme circumstances. So a hunched and stomped and maced in the face doesn't do it? Well, you know, I actually want to point the court to the actual facts of this case. In the April 26, 2008 incident, the facts of this case, particularly with respect to Officer Hughes, and I think that we actually need to take some time to separate Officer Hughes from Officer Lackey, because the specific facts, and these facts come from appellant's brief, not mine, so these are truly in the light most favorable to plaintiff, are that she won, she hit him with a ruler, she then punched him, and after non-defendants pushed him to the ground and kicked him and stomped him, so those actions are not at issue here, that she, quote, joined in and kicked him. And so there's basically three actions. There's a ruler, there's a punch by her, and there's possible kicking when she's joining in with some other people, although we don't really know how much because she's joining in with some non-defendants. We really have no idea kind of what's going on. Do you have enough to say that the jury ought to be able to sort it out and not a judge throwing it out? I think where we have no idea how hard she, particularly, again, Hughes, we have absolutely no evidence with regard to how hard she kicked him and punched him. We have no idea what the statures were comparing Mr. Williams to Officer Hughes. We have no idea. We know Officer Lackey maced him, although we don't know, was she standing two feet from him, was she standing two inches from him? This was a pro se case, yes? It was in the court below. So if instead of the argument that the judge did use, the judge had said, oh, you haven't shown that the kick hurt or something like that, don't you think the pro se person would have said, oh, judge, it hurt, or can I reopen to put in that testimony? And don't you think it would have been a clear error for the judge to deny that in those circumstances? But none of that ever happened because you're going on a completely different theory than the one the judge used. I do recognize that. However, I'll point out that when we made this argument on appeal, appellants had an argument in response to make that argument, and I will note that that argument was never made in response in the reply brief. It was never made when they stood up here on oral argument, and I think that this is completely akin to this court's case law talking about that if you ‑‑ it's sort of the waiver to the waiver argument with respect to 50A and 50B. So obviously normally you have to make a 50A, you have to state your grounds for 50A with specificity in order to make a 50B argument, and if you don't, you waive it. But if a plaintiff fails to point out that a defendant failed to make their grounds with specificity in 50A, they can't do it on 50B, then plaintiff waives the waiver. Do you argue in the district court? And I think there's a complete analogy to be made here. Plaintiff's first opportunity to make that argument. Let me go back to my question. Did you argue in the district court that the claims on the first incident should be thrown out because he didn't show he was injured? No, we did not. All right. So why isn't that a waiver? It would have been waiver, but plaintiff waived the waiver by failing to point that out. In the first instance, they had an opportunity to object to that, which is on appeal when we raise the issue, and they've never raised it. Your Honors are the first to bring it up. They could have objected. But you knew it was coming. What? Go ahead. Your Honors brought it up. Appellant didn't bring it up in their brief or on oral argument. And assume we examine that on the record that we've got before us. I take it that from what you said, your assertion is there's no jury question as to whether or not each of those individuals, Ms. Hughes or Ms. Lackey, by kicking in Ms. Hughes' case, by macing in Ms. Lackey's case, did something from which a jury could infer injury. That's got to be your position, right? On the facts of this case, yes. Okay. Gotcha. Understood. If I might just quickly move on to the case, the claims against the city. I think that there are clearly two grounds upon which the dismissal of those claims can be affirmed. I think the authority issue was pretty clearly established. Moving on to the expert witness, I think was the district court's ruling on that basis can be clearly affirmed. Estelle makes clear that you have to establish that there is both a serious medical need and deliberate difference to that need. And I want to make clear, because I don't think my brief was entirely clear. Well, hold up. When you say what the district court did is clearly appropriate, the argument from your opponent, which I'd like you to meet, is that there are some kinds of injuries where you've got to have medical evidence. You know, they denied me a medicine that I needed for a developing or chronic injury. You've got to have an expert for that. Everybody would agree. But they wouldn't give me medicine for pain when they broke my nose. Does it take an expert to come in and say a broken nose really hurts, so you should give somebody broken nose pain medicine for that? What's wrong with that argument, that there are some kinds of injuries and some kinds of pain associated with obvious injuries that are so significant that you don't need an expert to come in and say that really hurts? Everybody knows that really hurts. Because I think, if you might, I think the dispositive question is what is a serious medical need? Because the real question is not whether it was a serious injury. And I think where I misspoke a little bit in my brief and where I want to clarify here on our argument is it's not the seriousness of the injury. The injury happened, and, you know, inmates have a variety of injuries. I mean, inmates come into the system with, you know, HIV or, I mean, Mr. Williams came into the system with a preexisting broken neck. I mean, there's all kinds of serious injuries. The question is what was the deprivation or the denial or the prison officials' response in response to that need and what they didn't do and the consequences of that? And so I think the question is what was the consequences of their failure to provide that medication? And I'll admit in sort of looking through all the case law and trying to figure out, well, what is a serious medical need, the case law is a little bit all over the place on this, honestly. But looking at more recent case law, looking at the case Giles v. Kearney, 571F3D318, I think it kind of encapsulates it very well. It talks about a serious medical need is that which left unattended, quote, exposes a prisoner to a sufficiently substantial risk of serious damage to his future health. So it's this idea that it's not just like fleeting pain. It's not a temporary thing. It's something that has a real lasting effect. And so I think the question is, by not providing over-the-counter strength medication to Mr. Williams, did prison officials, you know, was there a possibility of sort of future lasting damage to him? And you needed an expert to make the case for the plaintiff in that regard? I think so. I think you really needed to understand what, if any, damage was there by him not having this pain medication. Was it, you know, okay, was he possibly in pain for three or four or five days, which might well be, or were there really some true lasting effects? Okay. We got you, Ms. Diffley. Thank you very much. And do you have any further questions? All right. Thanks very much. And we'll hear from Mr. Gold at this point. Yes. Thank you. Good morning, Your Honors. Good morning. May it please the Court, my name is Alan Gold, and I represent DHS. The plaintiff here, Mr. Williams, never presented any evidence, let alone sufficient evidence, on the issue of a final policymaker. That was a decision that the judge had to make, according to the Supreme Court and Jack and some other cases, and yet Mr. Williams gave Judge Joyner not a scintilla of evidence to make it. That ends the matter right then and there. Now, what do you say to the assertion that? I'm sorry, Your Honor. What do you say in response to the argument that there was an affidavit submitted by Ms. Wiener that made a reference to a policy and that policy on the ground, in addition to a couple other affidavits? She made a reference to a policy. Ms. Haney made a reference. Ms. Haney, I apologize. Ms. Haney, and it's Paragraph 5 at 151 of your record. In that paragraph, she has two sentences. The first sentence, with reference to the paragraphs in the complaint of Mr. Williams, summarized Mr. Williams' contention. Then she says he's referring to a policy that the city has, and the policy the city has, we now know, has nothing to do with this case because if you look at 202 and it's no convenience care, it doesn't even mention a restriction on over-the-counter drugs, that you have to buy your own over-the-counter drugs. And as to prescription drugs at 195 and 196, the city policy specifically says that a prescription by a physician can't be overruled except by senior staff for good cause shown. In addition, Ms. Haney identified a policy that doesn't exist, even if she did identify it. That's a policy promulgated by the city, created by the city, controlled by the city. There's no indication, except for this one incident, that PHS ever enforced it or even knew about it at the policy level thing. Ms. Haney's not a policymaker. Is there enough there to make the argument? In addition, Your Honor, there's something interesting. I don't mean to interrupt, but the ibuprofen fact here is interesting. Remember, Mr. Williams is denied, supposedly, prescription drugs and Tylenol on June 10th. Yet on May 16th, the same people who supposedly denied it to him gave him ibuprofen. So this must be a really new policy. All right. He makes the assertion through his counsel that he's put evidence in of, I guess you could spin it to say, of a custom. Even if I can't identify a policymaker, there's a custom. As Ms. McGuire put it, on the ground, they're doing something different. Why isn't what he said enough to raise that to at least a factual issue? No, he hasn't. First of all, this court in the Beck v. City of Pittsburgh case rejected that exact argument. They say that there still has to be a policymaker where there's a custom. The policymaker has to have acquiesced to the custom, and there is not a bit of evidence on that. In addition, a custom, according to the Supreme Court of the United States, has to be something that is widespread. So widespread, it's got the force of law. They haven't produced any evidence about that. The custom only exists in Mr. Williams' mind. He has no evidence of it anywhere else. And all the documents he relies on, his grievances, the answers to the grievances, isn't it interesting that not a single answer to the grievance or the appeal, do any of the city officials even mention the policy? You would think that if they were relying on a policy, they'd say, here's our policy. They didn't cite the policy, Your Honor, because there wasn't any. This isn't a case of relying on inference. This is a case of relying on inference, built on inference, on inference, and none of the inferences are really inferences. Okay. Thanks very much, Mr. Goldberg. Thank you, Your Honor. Appreciate your argument, and we'll have rebuttal now from Ms. McGuire. Your Honor, first, with respect to the city's argument that the jury Can you just pull that down a little bit, please? Certainly. With respect to the city's argument that Mr. Williams had to put on direct evidence of pain, of injury, that is just flatly incorrect. A jury can infer from the facts before it whether he suffered physical pain. Physical pain under Cooper, under Perez, under this court's jury instructions, is compensable. Do you have to tie it to them, though, if I understood Ms. DeFelice's argument? Correct. There were a lot of people kicking that guy, and she weighed in at the very end, and he hasn't done anything to tie the pain and suffering he was really suffering to her. And that's not the standard, Your Honor. He testified that Officer Hughes participated in the kicking, and that's enough for a jury to find that he suffered pain as a result of her actions. Under Giles, this court found that force used against an inmate after he's been subdued is gratuitous, and that's exactly what happened here, and the same with Officer Lackey. Once he's on the floor subdued, as Mr. Mason testified, she then sprays him in the face with mace. On those facts, the force is gratuitous, and a jury can find that he suffered physical pain as a result. With respect to her argument of the city as to the lasting efforts versus fleeting pain, it's a non-issue. If the standard is whether pain lasts for a long time, then you're not going to be able to compensate a plaintiff who suffers a traumatic injury, and that's not the standard here. Mr. Williams suffered pain. A jury is going to be able to understand that being hit in the face and thrown to the ground where you have a broken nose and sutures required for that is painful, and that pain treatment is necessary. In fact, the district court here at J223 asked Mr. Williams if he, in fact, suffered through this, the agony of this, without any pain medicine, and he affirmed that. With respect to PHS's argument that a final policymaker has to be established, this court found in Inela that that was not the case. In that instance, similar to here, the city acknowledged the policy that it was following, just as Ms. Haney acknowledged the policy that PHS was following here. And, Your Honors, I'd like to read for you the paragraphs in the complaint that Ms. Haney referenced in her affidavit. Paragraph 16, plaintiff was not treated for his injury. Instead, he was told by defendant PHS to bind painkillers because PHS's policy is not to provide pain medicine, pain medication to prisoners. At paragraph 29, plaintiff was told by PHS, a nurse, on June 24, 2008, that his nose may be broken. However, he was not treated. Instead, he was told to buy pain pills from the commissary because PHS's policy is not to issue them to prisoners when they can buy them. On these facts, he had a serious medical need. He had been given a prescription for Perkajizik, and it was never filled. When he raised this as a complaint, the response is that there was a policy in place of referring inmates to the commissary. Assume that those facts are true, and that you had people who failed to follow the city's stated policy. But, Your Honor, we don't have evidence. How does that make PHS liable? Correct. We don't have evidence that that was what happened. We have an admission from Ms. Haney, the Acting Health Services Administrator, who stated that she had firsthand knowledge of the policies of PHS to start. And then you also have, in the grievance response, a statement from the Acting Health Services Administrator at that time. She responds to Mr. Williams' original grievance, in which she states that Perkajizik was prescribed and that Tylenol is available at the commissary. I'm trying to get, and I apologize if I'm not asking clearly. What I'm trying to find out is, if one assumes that people failed to do what they should have done for Mr. Williams, how does that establish that there was a policy or a custom, and not simply that there was a mistake and maybe a bad one in not treating him the way they should have? How does that get you to liability under Monell for PHS? Correct. But there's no evidence that that's what happened. You have PHS as an entity, both in its motion for summary judgment and in the grievance response, stating that there was a policy of referring inmates to the commissary to purchase pain medicine. As a result of that policy, Mr. Williams was denied the prescription, Perkajizik, that was written for him. So we were submitting that on these facts. The jury could find that there was an on-the-ground policy of referring inmates to the commissary and that Mr. Williams suffered a serious medical need was not addressed because of that practice by PHS. Okay. I want to thank very much Ms. McGuire and my colleague from Steptoe & Johnson for willingly serving here as pro bono counsel. It's a real assistance to the court, as I'm sure it is to your client. I appreciate the argument from all counsel.